GREGORY GLYNN, Cal. Bar No. 39999
E-mail: GlynnG@sec.gov
ALKA PATEL, Cal Bar No. 175505
E-mail: PatelA@sec.gov
RONNIE B. LASKY, Cal Bar No. 204364
E-mail: LaskyR@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED

10 NOV -1  PM 2:37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. EDCV10-1686 VAP (DTBx) |
| Plaintiff, | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. |  |
| JAVEED A. MATIN and WILSHIRE EQUITY, INC. |  |
| Defendants. |  |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa.  Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged in this complaint.

2.     Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because certain of the transactions, acts, practices, and courses of conduct constituting violations of the federal securities laws occurred within this district.

## SUMMARY

3.     This case involves a scheme to manipulate the stock of Veltex Corp., a Utah corporation ("Veltex").  During the relevant time, Veltex was an apparel company with purported operations in the U.S., Canada, and Bangladesh.  The manipulation was in the nature of a "pump and dump" scheme in which insiders acquired newly issued shares of stock of the entity, made false representations about its business prospects, and then sold into the resulting market.  Beginning in at least 2006, while Javeed Matin ("Matin") was CEO of Veltex, he implemented a plan to funnel about 8.5 million Veltex shares in an unregistered offering to a company he controlled, Wilshire Equity, Inc., a Colorado corporation ("Wilshire Equity"), through Mazhar Ul Haque ("Haque"), a figurehead whom Matin had enlisted in his scheme.  Haque is not named as a Defendant in this action but has separately consented by Offer of Settlement to the issuance by the Commission of

1

1  a Cease-and-Desist Order pursuant to Section 8A of the Securities Act in a matter

2  entitled: *In re Mazhar Ul Haque*, Admin. Proc. File No. 3-14103 (November 1,

3  2010).

4      4.    To facilitate his scheme, Matin obtained false attorney opinion letters

5  written by a California attorney ("Attorney") claiming exemptions from

6  registration under Rule 504 of Regulation D of the Securities Act.  Attorney wrote

7  eleven legal opinion letters authorizing Veltex's transfer agent to issue the shares

8  legend free.  Attorney prepared the opinion letters, which advanced Matin's pump

9  and dump scheme, even though Attorney encountered numerous red flags

10  indicating that Wilshire Equity was acquiring the shares for distribution to

11  members of the public.  Once the transfer agent issued the shares legend free,

12  Wilshire Equity then immediately resold the stock to the public, thereby acting as

13  underwriters.  Haque, as Wilshire Equity's officer and director, signed subscription

14  agreements and other documents to facilitate the distribution of Veltex shares.

15  Matin and Wilshire Equity are sometimes referred to jointly as "Defendants."

16      5.    Matin contemporaneously touted Veltex by issuing a series of false

17  and misleading press releases grossly inflating Veltex's revenues, embellishing its

18  overseas operations, and assuring investors that Veltex's financial statements were

19  being audited.  During this time, the stock price of Veltex fluctuated between $0.33

20  and $3.30, and Matin generated approximately $6.5 million from the sale of about

21  10.5 million Veltex shares through Wilshire Equity during the relevant time frame.

## THE DEFENDANTS

23      6.    **Javeed Azziz Matin**, age 52, resides in Diamond Bar, California.

24  Until August 2008, he was the CEO and a director of Veltex.  Matin does not hold

25  any securities licenses.  He asserted his Fifth Amendment privilege with respect to

26  all matters in the Commission's investigation.  In connection with certain

27  fraudulent conduct in the Veltex offering, in February 2009, the Illinois Securities

28

2

1  Department issued an order temporarily prohibiting Matin from selling securities
2  in or from the State of Illinois. [Temporary Order of Prohibition, File No. 08-
3  00208 (Feb. 2, 2009)].

4      7.    **Wilshire Equity, Inc.** is a Colorado corporation, with its principal
5  place of business is in Mira Loma, California. Wilshire Equity has been in
6  delinquent corporate status since February 2008 for failure to file its annual report
7  with the Colorado Secretary of State. Neither Wilshire Equity nor its securities are
8  registered under the Exchange Act.

9                          **STATEMENT OF FACTS**
10  **A.**    **Background**

11      8.    In 1999, Matin acquired Coconino S.M.A., a public shell company,
12  for his purported apparel business and changed its name to Veltex. Veltex shares
13  are quoted on the Pink Sheets operated by Pink OTC Markets Inc. During the time
14  of the relevant conduct, the company's principal place of business was in the City
15  of Industry, California. Matin claimed that Veltex operated two subsidiaries –
16  Veltex Apparel and Veltex-Explorer (in Canada) – and a manufacturing facility in
17  Bangladesh. Matin was the CEO of Veltex and the signatory on company bank
18  accounts until August 2008.

19      9.    In April 2008, Veltex shareholders initiated a state court lawsuit due
20  to Veltex's failure to conduct regular shareholder meetings. [Fletcher, et al. v.
21  Veltex Corp., No. 080907145 (Utah State Ct. filed Apr. 30, 2008).] As a result, the
22  court appointed a receiver over Veltex and in August 2008, Matin was ousted from
23  the company. In or about August 2009, Veltex was reorganized under new
24  management, implemented a new board of directors, and moved its offices to
25  Chicago, Illinois. Veltex presently has minimal assets. Neither Veltex nor its
26  securities are registered under the Exchange Act.

27      10.    In 2002, Matin formed Wilshire Equity and maintained full control
28  over the company, although he was not named in any of the corporate documents.

1  He enlisted Haque, the accountant at Veltex, as a figurehead to serve as Wilshire
2  Equity's officer and director.

3  **B.   Stock Transfers to Wilshire Equity and the Rule 504 Opinion Letters**

4       11.   From about 2004 through mid-2008, Veltex transferred approximately
5  10.5 million shares of its stock to Wilshire Equity in separate and purportedly
6  exempt transactions.  Under Section 5 of the Securities Act of 1933, a company
7  may not conduct an offering of securities without first registering the offering with
8  the Commission unless the company can prove that a valid exemption from
9  registration exists.  With few exceptions, securities issued in an exempt transaction
10 are restricted, meaning, among other things, that these shares may not be resold by
11 the purchaser for at least one year from the date of acquisition.  Veltex transferred
12 about 8.5 million of these shares to Wilshire Equity from about 2006 to mid-2008,
13 and during that same time period, Wilshire Equity sold all 10.5 million Veltex
14 shares.

15      12.   Since its inception, Wilshire Equity's only operations have been
16 receiving and selling Veltex shares.  Haque, at Matin's direction, signed
17 agreements on behalf of Wilshire Equity and became the signatory on Wilshire
18 Equity's bank and brokerage accounts.  Matin directed Haque to sign numerous
19 subscription agreements on behalf of Wilshire Equity for the purchase of Veltex
20 shares, without naming Matin in any of the Wilshire Equity corporate documents.
21 For each transaction, Matin signed an authorizing Veltex board resolution and
22 Matin countersigned the subscription agreements on behalf of Veltex.  The
23 subscriptions agreements represented that (a) the Veltex stock transfer was
24 pursuant to Regulation D, Rule 504 exemption; and (b) Wilshire Equity was not
25 acquiring the shares with a view to distribution.  Matin knew that neither of these
26 representations was true.

27      13.   From about February 2006 to January 2008, Attorney, acting on
28 behalf of Veltex and at the direction of Matin, issued eleven opinion letters to

1   Veltex's transfer agent claiming that Veltex's sales of 8.5 million shares to
2   Wilshire Equity were exempt from registration based on Regulation D, Rule 504 of
3   the Securities Act, 17 C.F.R. § 230.504.  To obtain the opinion letters, Matin
4   falsely represented in the subscription agreements that (a) the stock transfer was
5   pursuant to Regulation D, Rule 504 exemption; and (b) Wilshire Equity was not
6   acquiring the shares with a view to distribution.  The transfer agent issued Veltex
7   shares to Wilshire Equity free of any restrictive legend.

8         14.   The oral and written representations made by Matin to Attorney in
9   connection with the attorney opinion letters were false.  First, Matin owned 100%
10   of Wilshire Equity.  However, for the purpose of the share transfers, Matin
11   manipulated and misrepresented the facts to make it appear that Wilshire Equity
12   was unrelated to Veltex and independently controlled by Haque.  Second, Haque,
13   at Matin's express direction, signed stock subscription agreements that represented
14   and warranted that Wilshire Equity was acquiring the stock for investment
15   purposes.

16         15.   Contrary to the representations in the subscription agreements, Matin
17   caused Wilshire Equity to sell Veltex shares into the market immediately upon
18   receiving them.  In most instances, Wilshire Equity sold the shares within days
19   after delivery into its brokerage account.  Four subscription agreements entered
20   into between Wilshire Equity and Veltex from about January to May 2006, allowed
21   Wilshire Equity to "purchase" two million unrestricted Veltex shares for a mere
22   $0.10 per share.  During this period, Wilshire Equity sold the two million shares on
23   the open market at prices ranging from about $0.79 to $1.05 per share, and Matin
24   received proceeds of about $6.5 million from Wilshire Equity's sales of 10.5
25   million shares of Veltex stock from 2006 to mid-2008.

26   **C.   The False Veltex Press Releases Issued by Matin and Veltex**
27         16.   Beginning in March 2006, Matin caused Veltex to issue at least six
28   press releases in which he portrayed Veltex as a growing and prosperous company.

1   Among other things, he represented that Veltex had significant revenues generated
2   from its apparel manufacturing operations in Bangladesh. Most of the press
3   releases also touted operations of Veltex's divisions, KCA Garment and Velvet
4   Textile Mills, which specialized in the manufacture of garments and high quality
5   fabrics. These press releases were materially false and misleading.

6       17.     Examples of some of the false statements contained in the press
7   releases included the following:

8           a.      On March 20, 2006, Veltex reported record 2005 revenues of
9                   $68 million. A quote in the press release from Matin stated,
10                  among other things, "KCA Garment and Velvet Textile Mills
11                  continue producing at record rates and with ever increasing
12                  efficiency."

13          b.      On September 5, 2006, Veltex reported revenues of $33 million
14                  for the first half of 2006.

15          c.      On February 7, 2007, Veltex announced that its revenues for
16                  2006 topped "the $70 million mark as expected."

17          d.      On October 16, 2007, Veltex report revenues of $35 million for
18                  the first half of 2007. In the same release, Matin commented,
19                  "We are on-track to exceed last year's record performance."

20      18.     The foregoing and similar statements in the press releases were false.
21  In point of fact, the Velvet Textile Mills plant was never operational. Matin
22  intended to set up the factory in Bangladesh. However, despite his efforts from as
23  early as 1996, no equipment was ever assembled and the plant was never
24  operational. Second, Veltex's revenues were nowhere close to $70 million, Veltex
25  ordered only one container of apparel from abroad between August 2007 through
26  February 2008, and Matin admitted to Veltex's CFO that inflated revenues were
27  derived through intercompany sales. On one occasion, Matin asked the CFO to
28  "fix" the company's financial statements to make the profits "look better." In

February 2008, Veltex's financial condition was such that it bounced payroll checks and was in a very poor financial condition.  Veltex would have needed approximately 250 orders per day to meet Matin's purported revenue figure in early 2008; in fact, it was averaging only two to five orders per day.

19.     Additionally, in an October 2007 press release, Matin stated that Veltex was undergoing an audit, which would be completed by the end of the month.  He referenced the audit again in a March 4, 2008 press release.  In fact, there was no true audit.  A letter from Veltex's auditor to his Canadian counterpart, in connection with an inventory audit, stated:  "Take a few random spot checks and indicate any discrepancies.  Don't get too technical. [] This is mainly just for show."  Matin misled investors that a legitimate audit was underway, leaving them with the false impression that the company's financial statements were reliable.

**D.     The Impact on Stock Price and Subsequent Trading by Wilshire Equity**

20.     From 2006 to June 2008, Wilshire Equity sold approximately 10.5 million shares of Veltex to the general public, reaping approximately $6.5 million for Matin. Of this, about $2.29 million represented proceeds in the twelve month period from February 2006 through January 2007.  Matin directed Haque to transfer the bulk of the $6.5 million proceeds to Veltex, which eventually Veltex transferred back to Wilshire Equity, which was at all times controlled by Matin. For example, in July 2006, Veltex transferred $1.7 million back to Wilshire Equity through 36 separate checks.

21.     Although some of the press releases may have impacted the trading volume, none of them notably affected the share price of Veltex, which continued to decline.  From 2006 through mid-2008, Veltex's stock price fluctuated downward between $3.30 and $0.03 per share.  Since approximately August 2008, trading in Veltex stock has been de minimis.

///

///

7

### FIRST CLAIM FOR RELIEF

#### UNREGISTERED OFFER AND SALE OF SECURITIES

**Violations of Sections 5(a) and 5(c) of the Securities Act**

**(Against Matin and Wilshire Equity)**

22.     The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

23.     The Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

24.     No registration statement has been filed with the Commission or has been in effect with respect to the offering alleged herein.

25.     By engaging in the conduct described above, the Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

### SECOND CLAIM FOR RELIEF

#### FRAUD IN THE OFFER OR SALE OF SECURITIES

**Violations of Section 17(a) Of the Securities Act**

**(Against Matin and Wilshire Equity)**

26.     The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

27.     The Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter:

a.     employed devices, schemes, or artifices to defraud;

b.    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

28.    By engaging in the conduct described above, the Defendants, and each of them, violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## THIRD CLAIM FOR RELIEF

### FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against Matin and Wilshire Equity)

29.    The Commission realleges and incorporates by reference paragraphs 1 through 21 above.

30.    The Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

a.    employed devices, schemes, or artifices to defraud;

b.    made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.    engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

1    31.    By engaging in the conduct described above, the Defendants, and each
2  of them, violated, and unless restrained and enjoined will continue to violate,
3  Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder,
4  17 C.F.R. § 240.10b-5.

5                              **PRAYER FOR RELIEF**

6         WHEREFORE, the Commission respectfully requests that the Court:

7                                       **I.**

8         Issue findings of fact and conclusions of law that the Defendants committed
9  the alleged violations.

10                                      **II.**

11        Issue judgments, in a form consistent with Fed. R. Civ. P. 65(d),
12  permanently enjoining Defendants and their officers, agents, servants, employees,
13  and attorneys, and those persons in active concert or participation with any of
14  them, who receive actual notice of the judgment by personal service or otherwise,
15  and each of them, from violating Sections 5(a), 5(c) and 17(a) of the Securities
16  Act, 15 U.S.C. § 77e(a), 15 U.S.C. § 77e(c), 15 U.S.C. § 77q(a), and Section 10(b),
17  of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R.
18  § 240.10b-5.

19                                     **III.**

20        Issue judgments, in a form consistent with Fed. R. Civ. P. 65(d),
21  permanently enjoining defendant Matin, and any company he owns or controls
22  now or in the future, from participating in the sale or offer to sell any security in an
23  unregistered transaction.

24                                     **IV.**

25        Order disgorgement of all ill-gotten gains from the illegal conduct alleged
26  herein, together with prejudgment interest thereon.

27                                      **V.**

28        Order the Defendants to pay civil penalties pursuant to Section 20(d) of the

1  Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15

2  U.S.C. § 78u(d)(3).

3                                              **VI.**

4            Retain jurisdiction of this action in accordance with the principles of equity

5  and the Federal Rules of Civil Procedure in order to implement and carry out the

6  terms of all orders and decrees that may be entered, or to entertain any suitable

7  application or motion for additional relief within the jurisdiction of this Court.

8                                             **VII.**

9            Grant such other and further relief as this Court may determine to be just and

10 necessary.

11

12

13 DATED:  November 1, 2010

14                                               GREGORY C. GLYNN
                                                 RONNIE B. LASKY
15                                               Attorneys for Plaintiff
                                                 Securities and Exchange Commission

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Securities and Exchange Commission

**DEFENDANTS**
Javeed A. Matin and Wilshire Equity, Inc.

Los Angeles County

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Gregory C. Glynn, Esq., Ronnie B. Lasky, Esq. U.S. Securities and Exchange Commission, 5670 Wilshire Blvd., 11th Floor, Los Angeles, CA 90036, Telephone: (323) 965-3998

Attorneys (If Known)
Jaak (Jack) Olesk, Esq., Law Offices of Jaak Olesk, 468 N. Camden Drive, 2nd Floor, Beverly Hills, CA 90210, Telephone: (310) 860-4799

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Unregistered Offer and Sale of Securities, 15 U.S.C. Sec. 77e(a), Fraud in the Offer and Sale of Securities, 15 U.S.C. Sec. 77q(a) and 15 U.S.C. 78j(b)5 and Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Injury | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☒ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

EDCV10-1686

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08) · CIVIL COVER SHEET · Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
 ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
 ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
 ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Javeed A. Matin--Los Angeles County<br>Wilshire Equity, Inc.--Riverside County | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

*** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date _Nov 1, 2010_

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Name & Address:  Gregory C. Glynn, Esq., Ronnie B. Lasky, Esq., U.S. Securities and Exchange Commission, 5670 Wilshire Blvd., 11th Floor, Los Angeles, CA 90036, Telephone: (323) 965-3998

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Securities and Exchange Commission | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | EDCV10-1686 VAP (DTBx) |
| v. | |
| Javeed A. Matin and Wilshire Equity, Inc. | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Gregory C. Glynn,  Ronnie B. Lasky  , whose address is  Securities and Exchange Comm. 5670 Wilshire Blvd., 11th Fl., Los Angeles, CA 90036  . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  NOV - 1 2010  _____

By: _____

CHRISTOPHER POWERS

Deputy Clerk   SEAL

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                   **SUMMONS**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## EDCV10- 1686 VAP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [X] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)    NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY